RALPH CARUSO & others, trustees, *vs.* PLANNING BOARD OF REVERE & others (and a companion case[1]).

Suffolk. May 9, 1968. — June 26, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Subdivision Control.*

Warranted findings by the judge in a suit in equity justified a conclusion that a municipal planning board, in approving a definitive plan of a subdivision of land, exercised "due regard . . . for securing adequate provision for . . . sewerage . . . where necessary" in the subdivision as required by G. L. c. 41, § 81M, although the plan provided only for an 8 inch sewer therein connecting with a 14 inch highway sewer on its western boundary, rather than for a 14 inch sewer running across the subdivision to the highway sewer as an extension of a 14 inch sewer laid in a second subdivision of land abutting the first on the east, where it appeared that, although the most direct and economical way to provide sewerage for the second subdivision would be through such a 14 inch sewer across the first subdivision to the highway sewer, there were "other ways of providing sewerage" for the second subdivision. [571–572]

A municipal planning board, in approving a definitive subdivision plan of land, was justified under G. L. c. 41, § 81R, in waiving a rule of the board that "all proposed streets shall be continuous and in alignment with existing streets as far as practicable" where it appeared that extending preëxisting streets across the subdivision "would serve no useful purpose, as these streets would be dead-ended at the . . . line of the . . . [subdivision] where it abuts" a second subdivision of land and that "no provision for the extension of these streets" was made in the plan of the second subdivision. [572]

Approval by a municipal planning board of a definitive subdivision plan of land was not precluded on the ground that a 14 inch sewer line

---

[1] The companion case is Samuel Missel & another, trustees, *vs.* Planning Board of Revere & others.

therein, which was not "connected to any other sewer line and . . . [was] not in service as such a line," would fill up and its contents become stagnant and create a health menace where the only evidence to support that ground was that some water was seen in a manhole there after the plan had been approved. [572–573]

Two BILLS IN EQUITY filed in the Superior Court on April 27, 1967, and May 26, 1967, respectively.

The suits were heard by *Hale*, J.

*Benjamin Rudner* for Ralph Caruso & others, trustees.

*Stephen T. Kunian* for Samuel Missel & another, trustees.

SPALDING, J. These are two bills in equity by way of appeal under G. L. c. 41, § 81BB, from two decisions of the planning board of the city of Revere (board) approving two subdivision plans for parcels of land referred to as "Colonial Acres" and "Green Acres, Section B". In the case of the Colonial Acres plan the plaintiffs will be referred to as Green Acres; in the case of the Green Acres plan the plaintiffs will be referred to as Colonial Acres. Colonial Acres was allowed to intervene as a defendant in the suit by Green Acres; Green Acres was allowed to intervene as a defendant in the suit by Colonial Acres. The cases were tried together. In each case a decree was entered upholding the decision of the board. Green Acres appeals from the decree sustaining the decision of the board with respect to the Colonial Acres plan, and Colonial Acres appeals from the decree sustaining the board's decision with respect to the Green Acres plan. The judge made findings of fact in each case. The evidence is reported.

## THE GREEN ACRES SUIT.

The findings of the judge include the following: Green Acres consists of thirty-six acres of land adjacent to Colonial Acres. The board approved two subdivision plans (sections A and B) for Green Acres. The current sewerage system in Green Acres is adequate to meet the requirements of sections A and B. It is not adequate to care for the sewerage requirements of the remainder of Green Acres' land which it plans to subdivide. To provide for future adequate sew-

erage of the remaining land, Green Acres included in its subdivision plans a 14 inch main running from the easterly side of section "B" to the westerly side of section "A," which is the easterly boundary of Colonial Acres. Green Acres expected that the board would "require . . . [Colonial Acres], at such times as . . . [it] presented a plan of subdivision for approval, to provide for a connection with this 14" pipe and an easement across . . . [Colonial Acres'] property" to connect with a 14 inch pipe on Cushing Avenue on the west boundary of Colonial Acres. Such a connection would be "[t]he most direct and economical way to provide sewerage for . . . [Green Acres'] large area of undeveloped land."

After a conference with Green Acres' engineer, the city engineer approached Colonial Acres to see if it would install a 14 inch sewer line across its property. Colonial Acres stated that it would do so only upon payment of $3,000 by Green Acres. Green Acres refused to pay this amount.

Green Acres argues that the Colonial Acres plan, which provides for the connection of an 8 inch sewer line with the 14 inch sewer on Cushing Avenue, precludes all other adjoining land owners from utilizing the common sewer service installed by the city. The judge found that the 14 inch sewer on Cushing Avenue was intended to service undeveloped land including land owned by Green Acres. He also found that, although the most direct and economical way to provide sewerage for this land would be through the extension of the 14 inch main across Colonial Acres to the 14 inch main on Cushing Avenue, there are "other ways of providing sewerage for . . . [Green Acres'] remaining land." He further found that the board's decision "was consistent with the public interest and with the intent and purpose of the Sub-division Control Law." These findings were not lacking in evidential support and cannot be said to be plainly wrong.

Green Acres contends that in approving the Colonial Acres plan the board disregarded c. 41, § 81M (as amended through St. 1957, c. 265), which provides that its powers

shall be exercised with "due regard . . . for securing adequate provision for . . . sewerage, drainage and other requirements where necessary in a subdivision." It likewise contends that the board failed to observe the requirements of its rules (specifically § 4 [A] [4]) which provide that "[a]ll proposed streets shall be continuous and in alignment with existing streets as far as practicable . . .." As to the statutory duty under § 81M, the judge could and did find that this requirement had been met. Green Acres' contention with respect to the rule is that the plan, as approved by the board, fails to provide for extending existing ways into the subdivision. It is urged that the board improperly waived the rule. Under § 81R (as amended through St. 1955, c. 411, § 1), the board is empowered to "waive strict compliance with its rules and regulations" where "such action is in the public interest and not inconsistent with the intent and purpose of the subdivision control law." See *Lyman* v. *Planning Bd. of Winchester*, 352 Mass. 209, 213–214. The judge found that extending preëxisting streets "across 'Colonial Acres' . . . would serve no useful purpose, as these streets would be dead-ended at the easterly line of the property where it abuts . . . [Green Acres]," and that "[n]o provision for the extension of these streets is made in . . . [Green Acres'] subdivision plan." In view of the finding that the board's decision "was consistent with the public interest and with the intent and purpose of the Sub-division Control Law," the board was justified in waiving the rule. See discussion in *Lyman* v. *Planning Bd. of Winchester*, 352 Mass. 209, at pages 213–214.

We have considered all of the questions argued and have dealt with such of them as require discussion.

## THE COLONIAL ACRES SUIT.

The only question presented by this suit is whether the 14 inch sewer line laid in Green Acres, section A and extended into section B, which has no outlet, will fill up with sewage which will become stagnant and create a health menace to

the residents of Revere. It was stipulated that in other respects the plan was entitled to approval. The judge found that the 14 inch line was not "connected to any other sewer line and is not in service as such a line." There was, to be sure, evidence that some water was seen in the manhole but there was no evidence that this was sewage. This occurred after the plan had been approved and does not tend to show that the plan was not a proper one for approval when submitted.

CONCLUSION.

The final decree in each case is affirmed with costs ot appeal.

*So ordered.*